I'll be happy to hear from you. Thank you, Your Honor. Good morning. May it please the court. My name is Emily Harrell. I represent, um, Mr. Carver. Um, we raised four issues in the brief. The first having to do with the adequacy of his rule 11 proceedings in front of the magistrate judge. The second being that the district court committed a procedural error at in this matter, and finally that the district court erred in, um, denying Mr. Carver acceptance of responsibility based on the district court's belief that his, um, objections at sentencing were frivolous, which, uh, I do not believe that they were. Um, as to the amount of loss, um, as I laid out in the brief, um, it's our contention that the government did not actually produce, um, enough information to determine the correct amount of loss. As to the number of cards, which were, um, available for use, uh, officer's testimony that were, some were encoded, some were re-encoded. Um, some were legitimate, um, gift cards and cards issued to the defendant and his co-defendant. So as to the number of cards that could be used, um, there's no definitive evidence in the record as to, um, the number of cards to calculate the loss. Um, one of the issues I raised was that there, uh, should be a usability, um, component as the... What part of the loss calculation do you object to? Did you object to the 500, the multiplier by, of 500 or what? No, sir. I, I objected to the, the number of cards that they multiplied by, um... You objected to the 51 number? Yes, sir. But didn't, didn't they have the, um, cards that were, were doctored where the, uh, the code at the end was, was, they, they tried to get them so that they didn't correspond. So there's no evidence that I can see that definitive evidence that the, the numbers on the cards that they were counting as 51 cards, that all of those were usable or authentic numbers that could be used, so in other words, some of the numbers had, um, E's at the end. Some of them appeared to be legitimate, um, cards, which had been legitimately, um, activated. And so there's no, there was varying evidence as to 51 cards. And, uh, officer testified that there were 44 cards that had different numbers written on the back than were embossed on the front. Were, um, was it crucial that they show that every card was used or simply that the cards were, that the 51 cards were run through the doctoring mechanism? So I don't think it's, um, necessary that they show that the cards be used. I think that they are, should be required to show that they're usable. They were so, well, they would be usable if they've, if, if they'd gone through that doctoring method that they had used. Not necessarily if they had, um, an error in the code, um, which by the officer's testimony could be shown by an E, um, noted at the end of the, of the code. So one of the, one of the, um, in order to apply, to raise the base offense level by four, uh, you'd have to show that the amount of loss, um, due to the doctoring of the credit cards was higher than $15,000. Right. And the figure that the district court came up with was $28,382. So even if you correct that, um, of not all of the cards were, not all the 51 were usable, uh, the district court figure still leaves it room for a rather large margin of error because anyway, you, um, slice the cheese, um, the figure would likely be above $15,000. And in this case, it was almost, uh, twice as, twice as high. And there were 51 cards that were in some way altered. There were 51 cards that were present and... No, altered. Well, there were... There were 64 cards. It's on page 89. Yes. And the, and... 64, and he said, how many were encoded? And he said 51 were encoded. And he examined the card. You're able to determine from index, yes, he ran, ran them all through and 51, he said, were encoded. So encoded does not necessarily mean altered. That's been my, my problem with some of his testimony is that he uses the word sum in both context of encoded and re-encoded. And so there's a, there's, to me, uh, my argument is, is there's not enough information to determine how many of those cards were re-encoded with, to become, you know, counterfeit access devices or unauthorized access devices. Well, I think part of the difficulty is that you're here on a clearly erroneous standard and the computation of the loss is, um, clearly erroneous. And, uh, there were 51 cards that were manipulated in some way. And we can, I mean, maybe encoded is a term of art or something, but when they, when they were manipulated in that way, they were certainly, um, altered and the subject of a rather, a very extensive fraud, um, uh, team. And then you have to have the, um, I think that the, the basis of the testimony, the testimony on which the district court made its finding were that, that, that magnetic strips on 51 cards had been encoded with numbers that didn't match up with the front. And that to me seems like an alteration. And I can't seem to say that the district court would have been clearly erroneous in taking that as a measure. And even if some of those cards were not used to make actual, um, purchases, there would have to be a, a large number that were not used for actual purchases to get you under the 15,000. And the district court, as a matter of common sense, would be able to say, well, they weren't just up there in that hotel room or wherever they were operating under playing a game. It wasn't just, you know, a game of checkers or something. They were, they were altering those cards for a reason. Um, not just for the heck of it. And the district court be able to take that into account, wouldn't, would it not? He would be able to take, the district court would be able to take that into account, um, but I think there needs to be an adequate showing that the cards were usable. I'm not saying that they had to have been used, but that the, um, uh, the statute requires an access... How could they not be usable? Because a lot of them were actually used and the others went through the same process. Uh, there's no testimony that, that the cards were actually used other than two cards, one being the credit card of the gentleman that was used to reserve the hotel room and then some charges, um, uh, attributed to another victim. And that goes to my other objection about the calculation of the number of victims. But there's, there is no testimony that the cards that they recovered had been used in any way. They were simply possessed. That's all that's required, isn't it? Does it, does it, is the statute require that you have to use it? No, the statute for the definition for access device requires that the card be, um, usable. Well, that's the ninth... Can be used. That's the ninth circuit standard. Yes, sir. Is you have this ninth circuit case with usability, but I'm not sure where that requirement is found actually in the law. And, um, I know it was an unpublished decision, but the, this court rejected that usability standard in United States v. Carter. Um, I actually don't think it was actually rejected. I think that, um... We've never adopted that usability standard from the ninth circuit. That's, that's correct. But you also indicated in that opinion that the defendant had not made any showing of, um, usability, uh, or that the government had made an adequate showing of usability. And so my contention would be that the evidence is not present in this case to show that these cards were usable. I thought the statute says if you possess, uh, a device and they serve, say a device means an access device that is counterfeit, fictitious, altered, or forged, uh, or an identifiable component of an access device or a counterfeit access device. Uh, and it seems to me that they showed that it was altered with the re-encoding, uh, that didn't match the front. And the statute requires possession of a, uh, counterfeit access device. So a counterfeit... I don't see anything in any of that which says it had to be used. So, um, a counterfeit access device and, uh, um, unauthorized access device are subsets of access device. And an access device has a specific definition which, uh, which requires that it can be used to obtain a benefit or, or illegal whatever. So my contention is... ...gift cards which can be used. It's just they couldn't be used with the original numbers because they're re-encoded. But there's nobody suggested the gift cards couldn't be used. So you start off with the fact they have gift cards. They set aside the keys and the other things that were not gift cards. And then they examined 64 gift cards. And they concluded that 51 of the 64 gift cards had been altered. And that's all the statute requires. The gift card is a device that can be used to get money. And then they altered it. But there's no requirement that it was actually used. No, I, I, I don't contend that. What I contend is that the evidence... Nobody has challenged the fact that these gift cards couldn't have been used. The fact is these gift cards were genuine gift cards. They were wherever they obtained them. You can pick them up and steal them from a store or whatever. But the problem was these gift cards were taken and re-encoded. And that's what he found that they had been re-encoded. And that's, I would think that would satisfy the word altered. It does, except that his testimony, again, is that some of them were re-encoded. Some of them were encoded. And some of them had... He explains that all the 51, the ones that were not re-encoded, he set aside. He found three 51 that were re-encoded. That didn't match the front. So he had, he also testified, Your Honor, that there were 44 cards that had numbers, uh, handwritten numbers on the back, which to him indicated that the number encoded on the strip did not match the number embossed on the front. And so the question becomes, well, is it 44 cards or is it 51? But you're coming... All this would be, if you were right, it'd be harmless error anyway, wouldn't it? You say it's 24, the loss was $24,000. Well, that's if... They say it's $27,000 or $28,000. That's if... And it's all above $15,000. That, that's correct. And that's if, if the 51 or 47, I think it was, cards that I calculated is correct. But I mean... But this becomes an evidentiary matter, really. We're getting into the evidentiary weeds. And the amount of loss and the calculation of the amount of loss has always, in this circuit, been subject to a clear error of standard. And there seems to me enough, um, from which the... I mean, from Detective Dean's testimony and from the methodology that was used and the purpose for which they were used, and the fact that there was a clear modification and alteration on so many of the cards. And it's hard to see that someone's clearly erroneous, given all of that. That's... I appreciate your argument, but it's sometimes a standard of reviews, a high mountain to climb. But thank you. And you have some time for rebuttal. And we look forward to hearing from you then. Ms. Howard, I'm happy to hear from you. May it please the Court. Thank you, Your Honor. This is one of those cases that we all fear. You hear about identity theft, and when you see a case like this, you see it can happen to anyone. As Judge Cain stated at sentencing, that he had considered the need for his sentence imposed to reflect the seriousness of the offense. This type of criminal activity is a significant problem in the entire nation. Businesses incur additional costs to implement security measures to try to prevent this type of fraud. The cost to society includes expenditure of public resources to investigate and prosecute these crimes. Additionally, identity theft can affect the lives of victims who are affected with their account numbers being stolen in almost irreparable ways by causing them loss of work, mental anguish, monetary loss, and loss of peace of mind. This is a case, and as the Court has already pointed out, in looking at the factors or the challenges that the appellant has made to the sentence, and the challenges as to the amount of loss, as Judge Wilkinson, Judge King have already pointed out, that given the number of cards is above $15,000. Well above. Well above. And in page four of the reply brief, the appellant concedes that issue when he states that the correct amount should be $24,382.02, thereby conceding that it is greater than the $15,000 that is needed to get the four-level increase for this specific offense characteristic. I'm not sure why we're arguing this amount of loss when the appellant has already conceded it's over $15,000. Do you think that point disposes of the issue? That and the testimony and the evidence that was presented, yes. She didn't argue but focus on it, but they raise a rule 11 issue as to the plea before the magistrate. That's correct, Your Honor. And there is... What do you got to say about that? As Your Honor stated in the prior argument, it's under a plain error standard of review, which is a very stringent test. This, the guilty plea proceeding... What was she supposed to do to try to fix that? Raise it at the time before the magistrate? Raise it before Judge Kain? Or make a motion after sentencing? The appellant never made a motion to withdraw the guilty plea. They didn't do any of those. They didn't do any of those things. That's correct. None of that was done. Even if the court were to find error, would they want to recognize... The question is whether they would have gone to trial if the error had not been present. And given the fact that he never sought to withdraw the plea, very little evidence to conclude he would have gone to trial. Exactly, Your Honor. Especially in light of this case, which was so unusual in that he pled guilty to counts one and two, but wanted to reserve the right to go to trial on count three, which was the aggravated identity theft, of course, the two years consecutive. The appellant was well aware of the possible sentence in this case. I would suggest that that was why he wanted to go to trial on that particular count. As to the other sentencing issues that are raised by the appellant... And he pled guilty on counts one and two before Judge Kain? Yes, Your Honor. And count three, where he wanted to go to trial,  That's correct, Your Honor. That's correct. He pled guilty in front of Judge Kain to counts one and two on November the 30th of 2016. There was a jury selection that was scheduled for January 24th of 2017. The case was set for trial on February 22nd of 2017, right before this case was to go to trial. He filed the waiver of indictment information and entered his guilty plea on February the 16th before Judge Austin. It's unusual to plead guilty in front of the magistrate judge. However, in this circumstance where the trial is scheduled and it's the next week, the magistrate judge was able to step in and assist the district court in accepting that guilty plea. So we could go ahead and get that accomplished and the trial wouldn't happen the next week. It was a scheduling conflict and therefore I think it was appropriate in this case and a good result for everyone to go ahead and get the guilty plea. The other issue that the appellant raises as to the sentencing, in addition to the amount of loss, is to the number of victims. It's the government's position that- If we review that Rule 11 thing for plain error, assume we do, usually we do, it seems to me we would, which prong does it fail on according to the government? The first one, the second one, or the third one? The first thing it has to be is error and the second one has to be plain. Right. Well, even if it were either one of those, would it affect his substantial rights? You'd say it wouldn't pass muster on the third prong. I'm not conceding that it would pass muster on the first or second, but it definitely wouldn't on the third. You're saying it doesn't satisfy any prong. That's exactly right. It wasn't error, it wasn't plain, and it doesn't- Affect his substantial rights. Sorry. As to the number of victims, of course, the two-level enhancement for more than 10 is- Well, the attorney stated that there were 18. That's correct, Your Honor, and the attorney at the sentencing hearing stated that he had nothing to refute, that there were 18 victims in this case. They said they were identified by name in the courtroom? Yes, Your Honor, and that is contained at page 180. It's the exhibit that actually identifies the victims by name. Well, the exhibit, that's 180, and the joint appendix identifies them by name. In the sentencing hearing, they were identified by name. When he referred to the certain numbers and went through each one to number 24 on 180, that victim was a victim whose card had been used to rent a hotel room, who actually- I think we understand the issues. I'm going to ask my co-panelists if they have anything further to inquire of you. Paul? I think we're fine. Thank you, Your Honor. Thank you. Ms. Harrell? Your Honor, I would just like to point out that, again, I don't view trial counsel's statement in the courtroom that the government had proved- You weren't counsel at that point, were you? No, sir. I don't view that statement as a concession. I view that statement as it then being up to the district court to determine how many victims there were, and- You said there were 18 victims identified by name in the courtroom. Well, the problem, Your Honor, is that victims under this particular guideline subsection has to be someone who suffered an actual loss or someone whose card was used. Now, I will say that when I wrote the brief, I indicated that there was a circuit split about victims and that sort of thing, but as with studying for any big test, I realized that the definition of victim had been resolved by a 2009 guideline amendment. That being said, a victim has to have suffered actual loss or has to have their means of identification actually used. What is the list on? I'm looking at 180 at that list, and they've got 27 victims listed by name, but what does that report to be? So the list of 27 individuals was, from my understanding, a handwritten list that government counsel provided, and was a combination of victims' names and information that was recovered during a 2014 state court investigation, and then 15 names from- 14, right? 14 from the current. They've checked those names. I thought there were 15, but- Maybe there are. I'll go with 14 if you- But, so those names were combined on that list, and so the government initially- 14 does the job, doesn't it? Well, my contention is there are actually only two, because- They had their money taken, but the others' identification was used on those codes. For it to be used, it has to be used in the sense of actually used, not used like transferred onto a card or possessed, because that- No, I mean, if you look at- You just told me that whose identification was used, and they had the names of people whose identification they were using in connection with this fabrication of cards. So that would be, my contention would be that that would be a transfer of that information onto a card- Real, live people in the world. Absolutely. Transfer of information onto the card, but there's no evidence that those cards were then used. I think if you look- I thought you just told me victim didn't have to use it, that they redefined it to say anybody whose identification was used in creating the devices. So the means of identification has to be used- To create a device, right? Yeah. How did they come into possession of the cards? I don't know that. They were- If you have your card swiped or stolen and run through an encoded device and in someone else's possession who wishes to abscond with your identity. In the real world, these people are certainly victims. The opening statement that opposing counsel made and that Judge Kane made was that in all kinds of ways, this credit card, gift card theft is disrupting and playing havoc with personal lives. And electronic devices have multiplied the opportunities for fraud and the commission of fraud exponentially. And they wreak havoc upon the efforts of busy people whose lives are committed with all this. In any real sense, these people are victims and every one of them would conceive of themselves as such. May I respond? Sure. Your Honor, I would just respectfully disagree that the names and information that the defendant had in the room qualify all of these individuals to be victims based on the definitions in the guidelines. And just as a quick ending, I would say that because we're here today arguing about these things, I certainly believe Judge Kane erred in taking away Mr. Carver's acceptance of responsibility. I think we went over this when we were talking about the actual amount of loss. And I just don't feel like we, that this circuit has adopted a usability standard. And the other thing I would say is, you know, even with respect, both with the amount of loss and with respect to the enhancement, we're under clear error standard. And a district court would have to be clearly erroneous to be overturned. That's part of the problem on both the number of victims and the actual dollar amount. You have to say in light of all this evidence that the district court was wrong. And as a matter of law, we haven't adopted, I don't think, any kind of usability standard. The Ninth Circuit did, but we have not. You have not, but there is a circuit split. And so therefore, I would argue it's not frivolous to raise this issue.  Thank you, Your Honor. Thank you. We come down and recounsel, take a brief recess.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Robert B. King